BENEFICIAL CONSUMER DISCOUNT COMPANY d/b/a Beneficial Mortgage Company of Pennsylvania, Appellant

v.

Pamela A. VUKMAM, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 8, 2011.
Filed Jan. 30, 2012.
Reargument Denied April 14, 2012.

Christopher P. Deegan, Pittsburgh, for appellant.

Jeffrey L. Suher, Monroeville, for appellee.

BEFORE: MUSMANNO, DONOHUE and COLVILLE*, JJ.

OPINION BY COLVILLE, J.:

This is an appeal from an order that sustained Appellee's "Motion to Set Aside Judgment and Sheriff's Sale." We affirm.

The relevant background underlying this matter can be summarized in the following manner. In October of 2006, Appellant filed a complaint in mortgage foreclosure against Appellee. According to the complaint, Appellee owns a home subject to a mortgage for which Appellant is the mortgagee. Appellant averred that Appellee's mortgage was in default due to Appellee's failure to pay her monthly mortgage costs.

* Retired Senior Judge assigned to the Superior Court.

The parties eventually agreed to settle the matter. In short, the parties agreed to enter a judgment in favor of Appellant for $217,508.81 together with interest. They further agreed that, so long as Appellee made regular payments to Appellant, Appellant would not execute on the judgment. The trial court approved the parties' settlement on May 7, 2009.

On April 5, 2010, Appellant filed an affidavit of default wherein it alleged that Appellee had defaulted on her payment obligations. The following day, Appellant filed a praecipe for writ of execution. On August 2, 2010, the subject property was sold by sheriff's sale; Appellant was the successful bidder.

On August 31, 2010, Appellee filed a document which she entitled "Motion to Set Aside Judgment and Sheriff's Sale." Appellee contended that the trial court lacked subject matter jurisdiction over the matter because Appellant failed to comply with the notice requirements of the Homeowner's Emergency Mortgage Act, 35 P.S. §§ 1680.401c *et seq.* ("Act 91"). More specifically, Appellee maintained that the Act 91 notice she received from Appellant failed to inform her that she had thirty days to have a face-to-face meeting with Appellant. After holding a hearing, the trial court agreed with Appellee that the Act 91 notice was deficient. The court issued an order setting aside the sheriff's sale and the judgment; the order also dismissed Appellant's complaint without

prejudice. Appellant timely filed an appeal.[1]

In its brief to this Court, Appellant asks us to consider the following questions:

A. Did Section 403c of Act 91 require [Appellant] to notify [Appellee] of an option to have a face to face meeting with [Appellant] where both the plain language of the statute and the history of such Act evidence a legislative intention to vest in the Agency the discretion to select which of these options should have been offered to homeowners in the Uniform Notice adopted by the Agency for use by all Lenders under the Act?

B. Was not the determination of the Pennsylvania Housing Finance Agency to remove any reference in its model Uniform Act 91 notice to homeowners having a face to face meeting with their lenders reasonable and consistent with the stated purpose and goals of such Act?

C. Should not the court below have deferred to the experience and expertise of the Agency in its administration of the Act, and should not the court below have upheld the validity of the Act 91 Notice sent to [Appellee] herein where such notice was entirely consistent with the model Uniform Notice adopted by the Agency for use by all lenders?

D. Even if the Act 91 notice should have offered [Appellee] the option of having a face to face meeting with her lender, should the court below have dis-

1. As to the manner in which we review such orders, our Supreme Court has stated the following:

A petition to set aside a sheriff sale is governed by our rules of civil procedure which provide that [u]pon petition of any party in interest before delivery of the ... sheriff's deed to real property, the court, may upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the

circumstances. In *Doherty v. Adal Corp.,* 437 Pa. 109, 261 A.2d 311 (1970) we held that a petition to set aside a sheriff sale is an equitable proceeding, governed by equitable principles. Appellate review of equitable matters is limited to a determination of whether the lower court committed an error of law or abused its discretion.

*Marra v. Stocker,* 532 Pa. 187, 615 A.2d 326, 328 (1992) (citations, quotation marks, and footnote omitted).

missed this action for lack of subject matter jurisdiction where [Appellee] had fully exercised her rights under Act 91 and was not in any way prejudiced by such omission?

E. Should not [Appellee] have been estopped from raising any objection to the Act 91 notice provided to her, and should not [Appellee's] objection to such notice have been barred by laches, where [Appellee] admitted to the validity of such notice in discovery and consented to the entry of judgment, and where [Appellee's] objection to such notice was made for the first time after a sheriff's sale had been held almost four (4) years after the commencement of the action?

Appellant's Brief at 3–4.

■ As an initial matter, we will consider whether the trial court properly entertained the Act 91 notice issue that Appellee presented in her "Motion to Set Aside Judgment and Sheriff's Sale." The trial court determined that, when a mortgagee provides to a mortgagor a deficient Act 91 notice and then files a mortgage foreclosure action, the court lacks subject matter jurisdiction to entertain the action. In its argument to this Court, Appellant raises a number of doctrines, including laches and *res judicata*, in arguing that Appellee untimely presented her Act 91 notice issue. Appellant's Brief at 31–33.

■ We begin our analysis of this threshold issue by noting the following principles of law.

The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs.

*In re Administrative Order No. 1–MD–2003,* 594 Pa. 346, 936 A.2d 1, 5 (2007) (citation omitted).

It is the law of this Commonwealth that a judgment may be attacked for lack of jurisdiction at any time, as any such judgment or decree rendered by a court that lacks subject matter or personal jurisdiction is null and void.

*Bell v. Kater,* 943 A.2d 293, 298 (Pa.Super.2008) (citation omitted).

■ Appellee has never questioned the competency of the trial court to entertain mortgage foreclosure actions. Indeed, the Rules of Civil Procedure govern such actions, Pa.R.C.P. 1141 *et seq.,* and save for exceptions that are irrelevant to this matter, the courts of common pleas have unlimited original jurisdiction over all actions and proceedings in this Commonwealth. 42 Pa.C.S.A. § 931(a). Appellee's complaints regarding the deficiencies in the Act 91 notice sound more in the nature of a jurisdictional challenge based upon procedural matters. Procedurally based jurisdictional challenges can be waived. *See, e.g., Hauger v. Hauger,* 376 Pa. 216, 101 A.2d 632, 633 (1954) ("It is the rule that consent or waiver will not confer jurisdiction of the cause of action or subject matter where no jurisdiction exists. However, this rule does not apply to ... jurisdiction based upon procedural matters, as to which defects can always be waived.") (citation omitted).

However, Appellee correctly highlights that, in the context of discussing subject matter jurisdiction, this Court has concluded, "[T]he notice requirements pertaining to foreclosure proceedings are jurisdictional, and, where applicable, a failure to comply therewith will deprive a court of jurisdiction to act." *Philadelphia Housing Authority v. Barbour,* 405 Pa.Super. 140, 592 A.2d 47, 48 (1991) (citation omitted), *affirmed without opinion,* 532 Pa. 212, 615

A.2d 339 (1992); *see also, Marra v. Stocker*, 532 Pa. 187, 615 A.2d 326 (1992) (concluding that, despite the fact that a judgment had been entered in the underlying mortgage foreclosure action, the trial court erred by refusing to set aside a sheriff's sale where the mortgagee failed to provide to the mortgagor the mortgage foreclosure notice required by 41 P.S. § 403). We are bound by these decisions. *See, e.g., Commonwealth v. Hull*, 705 A.2d 911, 912 (Pa.Super.1998) ("It is beyond the power of a panel of the Superior Court to overrule a prior decision of the Superior Court."). For this reason, we conclude that the trial court properly considered whether the pertinent Act 91 notice was deficient.

Moving forward, we note that the parties agree that, at the time relevant to this appeal, Act 91 provided, in pertinent part, as follows:

> **Before any mortgagee may accelerate the maturity of any mortgage obligation covered under this article, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the mortgage debtor for such mortgage obligation, such mortgagee shall give the mortgagor notice as described in section 403–C.** [35 P.S. § 1680.403c.] Such notice shall be given in a form and manner prescribed by the [Pennsylvania Housing Finance Agency ("agency")]. Further, no mortgagee may enter judgment by confession pursuant to a note accompanying a mortgage, and may not proceed to enforce such obligation pursuant to applicable rules of civil procedure without giving the notice provided for in this subsection and following the procedures provided for under this article.

35 P.S. § 1680.402c (amended July 8, 2008, effective September 8, 2008) (emphasis added).

> (a) Any mortgagee who desires to foreclose upon a mortgage shall send to such mortgagor at this or her last known address the notice provided in subsection (b): Provided, however, That such mortgagor shall be at least sixty (60) days contractually delinquent in his mortgage payments or be in violation of any other provision of such mortgage.
>
> (b)(1) The agency shall prepare a notice which shall include all the information required by this subsection and by section 403 of the act of January 30, 1974 (P.L. 13, No. 6), referred to as the Loan Interest and Protection Law. This notice shall be in plain language and specifically state that the recipient of the notice may qualify for financial assistance under the homeowner's emergency mortgage assistance program. This notice shall contain the telephone number and the address of a local consumer credit counseling agency. This notice shall be in lieu of any other notice required by law. **This notice shall also advise the mortgagor** of his delinquency or other default under the mortgage and **that such mortgagor has thirty (30) days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise.**
>
> (2) The notice under paragraph (1) must be sent by a mortgagee at least thirty (30) days before the mortgagee:
>
>> (i) asks for full payment of any mortgage obligation; or
>>
>> (ii) begins any legal action, including foreclosure, for money due under the mortgage obligation or to take possession of the mortgagor's security.

(3) The proposed notice under paragraph (1) shall be published by the agency in the Pennsylvania Bulletin within one hundred twenty (120) days of the effective date of this paragraph. The notice actually adopted for use by the agency shall be promulgated as part of the program guidelines required by [35 P.S. § 1680.401c]. . . .

35 P.S. § 1680.403c (amended July 8, 2008, effective September 8, 2008) (emphasis added).

■ As to the facts of this case, the parties agree that Appellant sent to Appellee an Act 91 notice and that the notice informed Appellee that she had thirty days to have a face-to-face meeting with a consumer credit counseling agency. They further agree that the Act 91 notice did not inform Appellee that she could meet face-to-face with the mortgagee, *i.e.*, Appellant. The trial court interpreted the language highlighted above to mean that the Act 91 notice sent by Appellant to Appellee had to inform Appellee that she had thirty days either to have a face-to-face meeting with Appellant or to have a face-to-face meeting with a consumer credit counseling agency. Because the Act 91 notice Appellant sent to Appellee failed to inform Appellee that she could meet with Appellant, the trial court concluded that the notice was deficient and that the court thus lacked subject matter jurisdiction to entertain the matter, presumably from the time that Appellant filed its complaint. Consequently, the court set aside the sheriff's sale and the judgment and then dismissed Appellant's complaint without prejudice.

Appellant begins its argument to this Court by documenting the history of Act 91 and its notice requirements. Appellant next challenges the trial court's interpretation of the relevant version of the Act 91 notice provision. According to Appellant, the trial court's interpretation of Section 1680.403c of Act 91 failed to give effect to the word "or." Appellant maintains that the Legislature intended to vest the agency with the discretion to decide whether the notice sent from a mortgagee to a mortgagor should include the option of the mortgagor meeting face-to-face with the mortgagee or the alternate option of the mortgagor meeting face-to-face with a consumer credit counseling agency. Appellant believes that the agency reasonably chose to include in the notice that it promulgated the option of the mortgagor meeting face-to-face with a consumer credit counseling agency. Appellant argues that the trial court failed to give the agency's interpretation and prerogative due deference. Jumping forward a bit in Appellant's brief, Appellant contends that it was entitled to rely on the notice promulgated by the agency. We pause at this point to address these aspects of Appellant's argument.

■ While there are multiple layers to Appellant's argument, a relatively straightforward statutory construction analysis reveals whether the trial court erred in its interpretation of Act 91. All matters requiring statutory interpretation are guided by the provisions of the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.*[2] *Swords v. Harleysville Insurance Companies*, 584 Pa. 382, 883 A.2d 562, 567 (2005) (citations omitted).

Under the Statutory Construction Act, the object of all statutory construction is to ascertain and effectuate the General

---

2. As with all questions of law, when we interpret a statute, "our standard of review is *de novo*. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary." *Swords v. Harleysville Insurance Companies*, 584 Pa. 382, 883 A.2d 562, 567 (2005).

Assembly's intention. 1 Pa.C.S.[A.] § 1921(a). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.[A.] § 1921(b). *Id.*

At the time relevant to this matter, Section 1680.402c of Act 91 clearly and unambiguously provided that, before a mortgagee could, *inter alia*, commence a mortgage foreclosure action against a mortgagor, the mortgagee was required to give the mortgagor a notice as described in Section 1680.403c of Act 91. Pursuant to the plain language employed in Subsection 1680.403c(b)(1), this notice was to, *inter alia*, advise the mortgagor that the mortgagor has thirty days to have a face-to-face meeting with the mortgagee who sent the notice or a consumer credit counseling agency to attempt to resolve the delinquency or default. In other words, Subsection 1680.403c(b)(1) clearly and unambiguously required a mortgagee to provide to a mortgagor notice that the mortgagor had a choice of whether to meet face-to-face with the mortgagee or a consumer credit counseling agency. While Act 91 undeniably empowered the agency to prepare a uniform notice, the Legislature mandated that the notice include **all** of the information outlined by Act 91's notice provision. 35 P.S. § 1680.403c(b)(1) (amended July 8, 2008, effective September 8, 2008) ("The agency shall prepare a notice which shall include all the information required by this subsection. . . .").

Here, the notice that Appellant provided to Appellee failed to inform Appellee that she could choose to meet face-to-face with Appellant. Consequently, the notice was deficient. Yet, such a conclusion does not end our inquiry.

Relying on *Wells Fargo Bank v. Monroe*, 966 A.2d 1140 (Pa.Super.2009),

Appellant maintains that Appellee was required to prove that she was prejudiced by the deficiency in the Act 91 notice. According to Appellant, Appellee could not meet her burden of proof in this regard because she, in fact, met with Appellant's representatives, which led to the parties entering the agreed upon judgment.

In *Wells Fargo Bank*, the Monroes defaulted on their mortgage. The mortgage servicer sent to the Monroes an Act 91 notice. Wells Fargo later filed a mortgage foreclosure action against the Monroes. The parties filed competing motions for summary judgment. The Monroes argued, *inter alia*, that the Act 91 notice was deficient. The trial court nonetheless granted summary judgment in favor of Wells Fargo. The Monroes appealed to this Court.

The Monroes' first issue on appeal was "[w]hether the Trial Court erred by requiring the [Monroes] to show the occurrence of prejudice as the result of their receipt of a defective Act 91 Notice from [Wells Fargo?]" *Wells Fargo Bank*, 966 A.2d at 1142. This Court described the Monroes' argument under this issue as follows:

Specifically, the Monroes contend that the Act 91 Notice they received "did not identify the Mortgagee, it only identified the Servicer, Countrywide." Monroes' brief at 8. Therefore, they claim that they "did not have the address of the note-holder where they could have sent items pursuant to the Real Estate Settlement Procedures Act or more importantly, a Truth–in–Lending request to rescind their mortgage." *Id.* The Monroes further assert that "the Act 91 Notice did not provide a place of cure within Westmoreland County where the property is located, nor did it provide a place of cure within a County contiguous

to Westmoreland County" and that it "included additional proscribed costs and fees." *Id.* Based upon these identified errors and in addition to them, the Monroes argue that the trial court required them to show that they were prejudiced by the improper notice, a requirement that they claim does not comply with Pennsylvania law. *Id.* at 9. Essentially, the Monroes assert that if the Act 91 Notice is improper, prejudice should be presumed.

*Wells Fargo Bank,* 966 A.2d at 1143.

The Court disposed of this argument as follows:

In response to the Monroes' assertions regarding the Act 91 Notice and the requirement that they show prejudice, we agree with the trial court's conclusion.[FN1] The Monroes received an Act 91 Notice and, even if it was defective, they were given and availed themselves of the opportunity to pursue mortgage assistance through the Pennsylvania Homeowners' Emergency Mortgage Assistance Program. They met with a credit counseling agency within the thirty days as provided by the Act 91 Notice and applied for the mortgage assistance. Moreover, the Monroes have provided no legal authority for their position, nor do they suggest what rights they were due above and beyond those that were afforded to them. *See* Pa.R.A.P. 2119; *Bombar v. West American Ins. Co.,* 932 A.2d 78, 93 (Pa.Super.2007) (stating that failure to cite relevant authority may result in waiver of the issue). Accordingly, we conclude that the Monroes' first issue is without merit.

---

FN1. Specifically, the trial court indicated that any issues regarding fees and costs would be addressed at the accounting which takes place after a sheriff's sale and at the time of distribution of the proceeds. T.C.O. at 3. Moreover, we note as to the assertion that the Act 91 Notice failed to provide a local location at which the mortgagor could cure a default, the Pennsylvania Code indicates that an address to which the cure may be sent by mail is sufficient. *See* 10 Pa.Code § 7.2(ii) (definition of "performance"). Here, an address for Countrywide in Dallas, Texas, was provided as the location to which any cure could be mailed. The Monroes did not take advantage of this option.

*Wells Fargo Bank,* 966 A.2d at 1143–44.

We find *Wells Fargo Bank* to be sufficiently distinguishable from the matter *sub judice,* such that the decision in *Wells Fargo Bank* has no impact on our decision in this case. As best we can discern, the deficiencies cited by the Monroes, with regard to the Act 91 notice they received, did not implicate Act 91's explicit requirement that the mortgagee's Act 91 notice must inform the mortgagor that the mortgagor can meet face-to-face with the mortgagee or a consumer credit counseling agency. Moreover, unlike in *Wells Fargo Bank,* there is no failure on the part of the parties to this appeal to provide this Court with pertinent legal authority.

Act 91 contains no language that suggests that an Act 91 notice which fails to advise a mortgagor that the mortgagor can meet with the mortgagee will suffice so long as, during the course of the mortgage foreclosure litigation, the mortgagor cannot prove that he or she was prejudiced by the deficient notice. In fact, Act 91 explicitly states that, before a mortgagee can even commence a mortgage foreclosure action, it must give the mortgagor the notice described in Section 1680.403c; Subsection 1680.403c(b)(1) clearly and unambiguously mandates that the notice must inform a mortgagor, *inter alia,* that the mortgagor can meet face-to-face with the mortgagee.

We conclude that the trial court did not make an error of law or abuse its discretion by sustaining Appellee's "Motion to Set Aside Judgment and Sheriff's Sale." In conjunction with its ruling, the court prop-

erly set aside the sheriff's sale, vacated the judgment, and dismissed Appellant's complaint without prejudice. Accordingly, we affirm the court's order.

Order affirmed.